www.circlelineartschool.com 17-13-13 Arista Networks, Inc. v. Cisco Systems, Inc. May it please the court, Lauren Deggan for Arista. The board in this case failed to apply its full-plate construction, in so doing erred in finding that the claims that recite the tunneling limitation were not shown to be unpatentable. The board's construction of tunneling, importantly, has two facets. The first part of it was tunneling means transmitting a frame without examination, including in Layer 2 and Layer 3 communications. But importantly, in the claim construction analysis, the board explained what it understood examination to mean in the context of the 211 patent. It explained that given the disclosure of an embodiment, as well as Dependent Claim 11, that an encapsulation and de-encapsulation of a frame are not considered to be examination of the frame, as the 211 patent uses that term. In particular, the board explained that the claim 11 defines tunneling to comprise encapsulating a frame, transmitting the frame, de-encapsulating the frame, and then directly transmitting the frame, and says overtly that read in light of the express definition and the specification, these actions, these four actions, do not consider examination. And so when the board then turned to look at the Kunstzinger reference, it needs to do two-step process. It first needs to look to see if there was examination, and if it found some examination, it needs to go on and determine, was that examination part and parcel of an encapsulation and de-encapsulation process? And the board simply stopped its analysis without doing that part of the claim construction. Did nothing. No finding. And that's on Appendix 25. By not applying its construction, the second part of it, the board overlooked and made no findings whatsoever about how in Kunstzinger, which discloses using IPSec tunneling encapsulation, and made no findings about whether when Kunstzinger teaches that what's called the outer header is examined, whether that examination is part of encapsulation. And the record, in fact, is very clear that the IPSec protocol does, in fact, add two headers. It adds an IPSec header, and then there's an outer frame header that is added. And it's those added headers, which are added as part of encapsulation that are looked at, and importantly what's not looked at is the now encapsulated packet or frame inside, the original. And looking at this and digging down into it, I thought that maybe Kunstzinger, when we looked at that outer packet, was determining whether to go from the start of a tunnel to the end of a tunnel. Am I correct in understanding that when it does the, in the encapsulation, decapsulation, it looks at that outer packet, which is clear? Is it the forwarding decision, if you will, that's being made there in Kunstzinger is looking at the beginning of the tunnel and the end of the tunnel? Am I correct in understanding that? I think that's right, Your Honor, that the entire looking of where to send that packet is to get it from one end of the tunnel to the end. On the other hand, in the patented suit, what's happening there when it looks at that in the encapsulation, decapsulation, is that it's just looking at what port to send it to, which is, I believe, either the start or the start of the tunnel. Am I correct in understanding that? I think that's not quite right, Your Honor. And so the tag that we look at in terms of figure four is really the best figure to kind of understand where the tunnel actually lives. So this is in the 211 patent? Yes, Your Honor, it's Appendix, I believe, 33. Excuse me, Appendix 32. And so the tunneling that happens through the bridge in the 211 patent starts from the upper right-hand side where the packet comes in at the inter-bridge link, and that tunnel goes then through the entire bridge and out through, say, for example, port 5 or 6. And importantly, the port 5 is kind of the beginning of a land segment. And so when the packet comes in through the interlink bridge and the bridge internet port 412 examines the tag, it figures out, well, what is the subport? And when it determines the subport, it knows exactly what land segment it will send the packet out. So that examination of the tag 506 is for forwarding purposes. It's for the precise purpose of figuring out what land segment, i.e., the one that's connected to port 5, the packet should be forwarded on. In terms of where's the tunnel, the tunnel is within the beginning of the tunnel is at the beginning of the bridge. When it comes into the bridge, bridge interconnect port 416 is tunneled through and exits at port 5 into the land segment. Okay. And as I understand your adversary's position, they're saying that there's not forwarding going on because the element bridge forwarding engine 406 is not being used for the tunneling. So I think there is some confusion about how does bridge forwarding engine 406 play in here. That is for regular old forwarding. And so something that's not tunneled, you would absolutely look at the header and decide what land segment it would go out. It could go any number of places into the network. But importantly, the bridge at issue is doing the work. It knows where to send that packet, and it knows that packet by looking at the regular header. It would do ordinarily in terms of regular old forwarding, not the tunneling that we're talking about with respect to the use of the tech. And I thought what might be helpful, your honors, is this portion in column five that talks about this definition of forwarding without examination and how it really fits into the rest of the patent. If you look shortly above, that definition starts at roughly line 59 of column five, but right above it, around line 55 in the patent, it explains how you have this pass-through path that we were just talking about from where the packet enters on the upper right-hand side, the pass-through path from subpoint A99.0 all the way down to port zero. It talks about this pass-through path, and then it says it's described in greater detail below. And then it explains how when you're sending packets from subpoint A99.0 to subpoint A, it's done without any examination by the bridge. But as we look into the patent, and we see what is described below is exactly this configuration in column 10, starting at around line 29, about how we are configuring to know that subport four is mapped directly to actually port five, which is the exit. It maps it directly to a land segment as part of the configuration. And the only way that the bridge knows how to get the packet to the appropriate port five is by examining the tag. The tag tells us you should use subport four. For example, in column nine, around line 29, as well in column 11, around line 20, the patent tells us if you need to learn what land segment a packet that is tunneled is going to go to, you need to read the tag. This tag was added by encapsulation. You read it, and then you make a forwarding decision to that land segment based on what information you find in the tag. And that is remarkably similar to what we see in Kutzinger, because you look at the outer IPsec header in order to figure out where you're going to send the friend. Can you walk us through Kutzinger in the same way you just did with the 211 patent? I would be happy to. So Kutzinger, I think the best way to think about Kutzinger is if you look at the graphic at page 19 of our opening brief, and I'll use that because it's a little clearer, but I will map it back to the Kuzinger reference itself. Is that a figure from Kutzinger? No, that's a figure that our expert put together based on his review of Kutzinger, and I believe you can find that in the declaration itself at appendix 6258. So just starting with that as a bigger picture, then I'll tie it back into Kutzinger. We see that this original packet is the box in the very center. That original packet has a payload, and it has the address information where the packet would need to go, for example, to the host. But because it's tunneled, that information has remained secret and encrypted, and instead they put another header on top of it. What's shown as the other box around it is the IPsec header, and that header is used to help the packet be routed as it travels through the broader networks. On top of that is a frame header. The frame header is something that the bridge itself will look, without getting too deep into the technology, the frame header is done at layer 2, whereas the IPsec header is done at layer 3. Once you're inside the bridge, once you're in a LAN or local area network, you use the layer 2 header, and if you jump to a new local area network, you use the layer 3 header in order to get to where you're going. Turning to Kutzinger itself, which is at appendix page 532, column 3, that explains in detail what I just tried to explain from the picture, which talks about how tunnel packets, and this is around line 7, tunnel packets in IPsec have an outer IP header, whose source and destination identify the endpoints of the tunnel, and an inner IP header, which is shown as part of the original packet in our figure, whose source and destination identify the originator and recipient of the packet. When the IPsec is used in this tunnel mode, the complete inner packet is protected and travels through the tunnel, but the outer header remains in the clear and can be used for the routing. There is a figure in Kutzinger that shows this a little better, and that's figure 4 on page 523, and that's showing in a crudish fashion how in element 410 and 403, these are the local area networks, and the tunnel is going right through, and that is intended to show how the inner packet, the original packet, is not looked at at all, and in order to get from one end to the tunnel to the next, you're looking at what's called the outer header, this IPsec header. In Kutzinger, one difference I'm seeing, and tell me if I'm incorrect, but it says that you're going to identify the endpoints of the tunnel, so you know the beginning and the end, as opposed to the patent in suit, where you just know the beginning. You're just going to like node A5, for example. Well, it talks about the endpoints of the tunnel, but you make lots of hops within the network, and at each and every hop, the node at issue, whether it be a router or a switch, has to look at the top of the header. It has to look at that outer header, and so it looks at the outer header to make the routing, the forwarding decision for the next hop. Now, the claim construction doesn't say anything about, well, you can only do one hop, or you have to do three hops. The claim construction frankly says, without examination, but it's okay if you do examination as part of the encapsulation and de-encapsulation process, which is exactly what's happening in Kutzinger, exactly what's happening in the tag. So I think our goal here is to be very clear on what the claim construction is and what the board said, and if you apply the board's construction, having these two parts, to the Kutzinger reference, you can help to conclude that the kind of examination the board identified is part and parcel of encapsulation and de-encapsulation, which is adding the tag or adding the header, transmitting, looking at the header to decide your next hop, and then directly transmitting it to the next hop. And with that, I would like to try to reserve some time and list three more questions. Okay. Yes, no, that's it from the other side. Thank you, Ms. Sutton. Thank you, Judge Newman, and may it please the court. I completely agree with Arista's counsel that this case ultimately turns on whether the board properly applied its full construction. The problem for Arista here is that Arista's arguments on appeal both assume that the board adopted a far different construction of tunneling than the one the board actually articulated in its opinion. The board was clear that tunneling means, quote, transmitting a frame without examination. What page of the decision are you looking at? I'm looking at page 10 of the board's decision, where it actually announces its planned construction. And what it says at page 10 of its decision is that tunneling means, quote, transmitting a frame without examination. And then the board is equally clear at page 23 of its decision that this construction excludes any examination that occurs during transmission for purposes of making a forwarding decision. And the board also says at pages 23 to 25 then... Yeah, but the heart of the matter is page 9, so when do you get to that? Yeah, so I'm happy to get to page 9, Judge Toronto. And I think that nothing at pages 8 or 9 of the board's decision is creating a carve-out for the encapsulation and de-encapsulation process, or creating a carve-out to that construction for the encapsulation and de-encapsulation process. I mean, I take it, and maybe I'm wrong about this, is that the heart of the disagreement between the two of you is that you take one view of what the page 9 sentence says at the top of page 9, and they take a different view. Can you illuminate that? Yeah, I think that's a fair characterization, Judge Toronto. So what we think that is happening on pages 8 and 9 when it's talking about encapsulation and de-encapsulation is the board is acknowledging that Claim 11 talks about this encapsulation and de-encapsulation process during tunneling as explaining why that isn't a form of examination that's excluded, and it's because it doesn't happen during the examination process. And you can see that as the board recognized from Claim 11 itself, which lays out encapsulation, de-encapsulation, and transmission as separate steps, separated by stomach colons, which this court said in Affinity Lab is a clear signal that these are distinct steps and distinct actions, and the only type of examination that 211 patent excludes is examination that occurs during transmission. So if there's an examination that occurs during encapsulation and de-encapsulation, that falls outside of the scope of the claims. And what happens in Kunzinger is there is examination that happens during transmission. That's what Arista's expert admitted at pages 11, 22 to 23 of the appendix, and that's what the board relied on at pages 23 to 25 to find that Kunzinger does not disclose this tunneling limitation precisely because it's performing examination during transmission. And the board at pages eight and nine is not creating a carve-out to the express definition of tunneling in the patent. It's instead explaining why that's perfectly consistent with the express definition in the patent. And you actually see that at pages eight where when the board is starting to talk about this encapsulation and de-encapsulation notion, it says it's going to reconcile that with the express definition that's in the 211 patent. And then it goes on to explain that encapsulation and de-encapsulation are not a form of examination. That's because they're not happening during transmission. So where is it that you see that they're making this distinction about during transmission on pages 23 to 25 of the board's opinion? Meaning distinction between during transmission and during encapsulation and de-encapsulation? You made that distinction. You said the PTAB made that distinction. I just want to know where it is. You said on pages 23 to 25. I would like you to direct me to the specific place where that's happening. So I think on 23 and 25 what the board is doing is it's explaining what transmission means. And it's just saying there cannot be examination during transmission. And on 23 right there it's block quoting the text of the specification itself at column five. And then the board moves on from there to rely on what a RISD expert is saying. And it's admission that there is examination happening for forwarding decisions. And then it's saying well since the patent explicitly excludes performing examination during transmission and it's undisputed that that happens in Kunzinger that that resolves this case. I think this may be exactly the same question but anywhere in the board opinion 8, 9, 23, 25 any place else where is a phrase the phrase during transmission or a phrase clearly comparable to that use? So the board never uses the phrase during transmission. What it uses is the phrase that comes straight from the specification of tunneling means transmitting a frame without examination. And it says that at three different places including on page 8. And it says that at page 23. And then what it says is that it cannot happen examination of a frame for forwarding decisions is excluded by the definition of tunneling. That's at appendix 23. And that's what the board then uses to rely on the admission from a RISD expert that there is examination happening for making forwarding decisions. I don't see this during transmission. I mean can you point to me like look at pages 23 to 25 and point to me exactly what language you're relying on. Because you're paraphrasing it and I'm just not seeing your point. I want to understand what your point is. Yes, so on 23 the board says and this is in the block quote where it's quoting from the specification. As used herein tunneling is used to refer to transmitting a frame without examination. And on page 10 that's the exact construction of tunneling that the board adopted. And then one line above that on page 23 again the board says the 211 patents definition of tunneling excludes examination of a frame for forwarding decisions. And it does that while discussing the admissions from RISD's experts. Now I want to also if I can turn to how Kunzinger is different from the encapsulation. You don't want to go there yet. Right, because I'm at least just speaking for myself I still do not understand where you're getting this distinction between that you're making that turns on your language during transmission. I have a feeling it's extremely clear to you but it sure isn't to me. Okay, I'm getting it from page 10 of the board's decision where the board says quote accordingly we construe tunneling to mean transmitting a frame without examination. Right, and that's its conclusion about what the claim construction is. Yes. Having one page earlier almost exactly one page earlier by the line said we understand that encapsulation and de-encapsulation of a frame are not examination of a frame. So it has used the term without examination and just before that defined something that's not part of the excluded examination thing. And the dispute between the two of you is what the terms what the meaning of this excluded thing is. And I guess I'm still not understanding your position and its justification on that. So our position is that the key word in the board's construction is that word transmitting. And that it's the transmitting that needs to happen without examination and the board is getting that straight from column 5 of the 211 patent. You can see that on page 8 where it block quotes lines 59 column 5 line 59 through column 6 line 1 and walks through exactly what examination means and it uses it by talking about transmitting a frame and then it walks through the example of making a forwarding decision by examining the frame to determine the corresponding land segment to send the frame to. And then what the board does when we get to the part of its construction or part of its decision that's disputed at pages 8 and 9 is the board is walking through and is then trying to explain we have this claim 11 and it talks about encapsulation de-encapsulation that happens during tunneling and it wants to explain why that's not examination and the reason it's not examination is because it does not happen during transmission. And then the board and that's why the board doesn't feel any need to talk about whether it comes and it does encapsulation and de-encapsulation when it gets to pages 23 through 25 because it's made this decision that if you're making a forwarding decision that is always per se the type of examination that is not allowed and it doesn't view encapsulation and de-encapsulation as a carve out from that per se rule that is in the specification and that's why the board I'm following what you're saying now. You're focusing on transmitting. Exactly. Okay. Now how is it that Kunzinger is teaching the encapsulation de-encapsulation like looking at that tag during transmission as opposed to doing it during encapsulation de-encapsulation. Yes. So in Kunzinger what happens is you have these two end points And if you can point to the reference itself as you're going to be more persuasive. Yes. So Kunzinger at column 3 talks about performing this encapsulation and de-encapsulation and it says actually starting at column 2 lines 53 to 57 says that these tunnels are used to provide a secure exchange and then it says at column 3 that there's this outer header that's happened and that happens at the end point But where are you looking at in column 3? At column 3 lines 7 to 11. Thank you. And it talks about setting up this outer header which Risa's council talked about. And then if you continue looking at column 3 lines 11 through 15 it talks about how in this tunnel mode the outer header remains in clear text form as the packet travels through the tunnel and it's undisputed by the expert that what's happening then as the packet travels from one router to the next is that it's being examined to determine how to forward this to the next device. And at each of those intermediate routers there's no encapsulation or de-encapsulation that's occurring as our expert explains at I believe it's page 1024 of the appendix. Instead it's just making a forwarding decision completely divorced from the encapsulation and de-encapsulation. It's only at the two end points of the tunnel that any encapsulation and de-encapsulation takes place and there's all these intermediate devices as our expert explained that are still having to make forwarding decisions along the path. Now that's different from the 211 patent and the encapsulation and de-encapsulation it talks about. In that encapsulation and de-encapsulation it says that the tag is being used to internally route the frame through the tunnel and to the various internal objects such as the bridge forwarding engine or the tunneling engine. And you can see that column 7 lines 38-42 and then again it lines 49-52 and it's the bridge forwarding engine of the 211 patent. And it is the bridge forwarding engine and the tunneling engine that actually make the forwarding decisions and they don't do it by looking at the encapsulation tag that's added on to the packet unlike in Kunzinger which does look at the IP address that's in the outer header. What's the tag doing? So the tag is just helping to what happens is in one of these devices I'm sorry how does the tag by helping internally route do that perform that function without something looking at it? So it does look at the tag it doesn't look at the tag I'm sorry what looks at it? The tunneling multiplexer or what? Yes the multiplexer and demultiplexer described in column 7 looks at the tag and then using that tag internally routes it to a device that's inside. So for purposes of examining during transmission why is that different from what's happening in Kunzinger? It's because as the board understood that's not actually during transmission. The transmission is happening at the forwarding engine and at the tunneling engines and that's where the transmission occurs. This is kind of a precursor step to transmission and at those engines it's a pre-configured predetermined route and as a matter of fact if the user actually changed the configuration of the device to change that predetermined route even though for two identical packets the internal tag was the same they would go to different devices. Does Kunzinger describe expressly or implicitly any arrangement by which with this outer header inner header business there is actually a direct transmission so that there isn't a intermediate essentially what amounts to a little router looking at it? Kunzinger never describes that and it never describes it even at the two endpoints that there's ever a forwarding decision that's made without looking at the outer frame. But every example in Kunzinger and if you look at column 10 it actually walks through this so for example column 10 lines 45 to 47 talks about a security gateway that performs forwarding functions and it's neither a sink nor a source point for the user traffic and that means an endpoint and there's no example in the patent that gets rid of that internal security gateway that's between the two endpoints and there's always some forwarding decision that's happening along the way in Kunzinger. There's never a pure encapsulation de-encapsulation direct transmission without a router in between. So in the picture from the 211 patent that we were looking at I guess figure 4 figure 4 yes so where in this figure does some unit do something with the tag? So it is the number 418 the MUX demux that's listed there and you can see that described at column 7 lines 42 to sorry lines 52 to 54 it's the MUX demux that makes the decision based on the tag and it determines what subport that it will go to based on that tag and then the subport will send it to either the bridge forwarding engine or the tunneling engine and it's at that bridge forwarding engine and the tunneling engine that then the actual forwarding decision is made and the actual transmission occurs outside the device and you can So I think Ms. Denon said that the tunnel here I think I heard her say this starts at 418 not at 416 and if that's right then 416 is actually doing something with the tag during transmission through this tunnel. Well so I think that brings up an important point which is that tunneling or transmission happens during tunneling but tunneling and transmission are not coextensive and again I think if you look at column 11 it talks about this de-encapsulation and encapsulation process happening in addition to transmission occurring and if you I see my time is up so I can just make one final point Judge Newman if you look at actually column 11 where it walks through the process that claim 11 covers it  de-encapsulation occurs and then once or sorry first encapsulation occurs and then once that occurs then transmission happens and then it again talks about de-encapsulation occurring and then it says next after the de-encapsulation then transmission occurs from the tunneling engine directly to the output port and then to the physical device and that's at lines 9 to 27 and so in the end we'd like to ask the board to affirm or sorry the court to affirm the board's  claims 2 and 13 and all that depend from it are patentable. Thank you Your Honor. Anything else you want to ask Mr. Wilcox? Any more questions? Thank you Mr. Wilcox. Thank you Your Honor. So if I could clarify I think counsel suggested that the transmission doesn't happen in figure 4 until we get to a tunneling engine 410 or the bridge forwarding engine 406. That's simply not true.    interconnect port we look at column 7 lines 38 it says the bridge interconnect port and the bridge forwarding engine 406. That's simply not true. 412 internally routes which means forwards data to either the forwarding engine or the tunneling engine depending on for example information associated with the data i.e. the encapsulation tag. So the transmission and the forwarding is happening right up at the top where I told you at 412 coming in 418 we tunnel all the way down to the land segment at the end of port 5 when there's a tunnel packet. And so I think in terms of technically I just need to make that clarification. With respect to what is you know is there something different about transmission being different than encapsulation we must go back to the board's opinion at appendix 8 where it identifies four actions that do not constitute examination. The board is correct that's encapsulating transmitting deencapsulating and then directly transmitting to the port. So there's no suggestion that you can divorce encapsulation deencapsulation from the process of transmission. The board tells us and the patent tells us it's all together. Moreover when we look at column 9 around line 15 it specifically defines deencapsulation as examining the frame. Examining fields in the frame. And that means that the encapsulation process and the deencapsulation process includes examining for forwarding purposes. And so this sort of hypothetical argument of claim 11 simply disregards the overall teaching. The last thing I'll say as my time is up, your honors, is further response to one of your questions. Claim 2 talks about reciting tunneling a first land with a third land through said first intermediate device for the purposes of the kind of tunneling in this patent. The tunnel is through the bridge. And so the end points and the distinction between the end points in the tunnel is really immaterial because they're both using information added as part of encapsulation in order to route to the appropriate destination through the tunnel. They're different sized tunnels, no question, but the same exact sort of tunneling. And for that reason we've asked the court to vacate the board's opinion, make it clear that the construction has these two separate parts and ask the board to apply the second part so we can have a record on why Cleansing Center does in fact have that kind of tunneling. Thank you. Thank you. Thank you very